UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL MEDIA FILMS, INC., a Nevada corporation )<br><br>Plaintiff, )<br><br>v. )<br><br>LUCAS ENTERTAINMENT, INC., a New York corporation; )<br><br>LUCAS DISTRIBUTION, INC. a New York corporation, and; )<br><br>ANDREI TREIVAS BREGMAN p/k/a MICHAEL LUCAS an individual )<br><br>Defendants. ) | <br>**07 CV 1178**<br>Civil Action No.<br><br>**COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff International Media Films, Inc., for its complaint against Defendants Lucas

Entertainment, Inc., Lucas Distribution, Inc., and Michael Lucas, an individual, by its counsel

Fish & Richardson P.C., states and alleges as follows:

### INTRODUCTION

1.      This is a case of willful trademark and copyright infringement by one of New

York's most lucrative pornography filmmaking and distribution enterprises, and their principal,

pornographic film star, Michael Lucas. The Defendants have targeted for infringement one of the

most renowned, distinguished films of the Twentieth Century, LA DOLCE VITA.  Michael

Lucas, as well as his filmmaking and distribution companies, are in the business of creating,

displaying, exploiting, and distributing explicit, "hardcore" pornographic films.  One such

explicit film, exploited as a "Part 1" and "Part 2" because, according to the Lucas Entertainment

website, "there's so much great f*cking that [they] can't fit it in one disc..."  is sold under the

LA DOLCE VITA title and is the subject of this action.   The acts of the Defendants have, are, and will continue to infringe, tarnish, and dilute International Media Films Inc.'s trademark rights in and to the LA DOLCE VITA mark, as well as International Media Films Inc.'s copyright in and to the film, LA DOLCE VITA.   Accordingly, International Media Films, Inc. files this action seeking injunctive relief, damages, attorney's fees and costs.

## THE PARTIES

2.      Plaintiff International Media Films, Inc. ("International Media Films") is a Nevada corporation with its principal place of business at 310 East 44th Street, Suite 1024, New York, New York 10022.  International Media Films is a film distribution company that specializes in distributing classic film titles, and is the owner of all right, title and interest in and to the copyright and trademark of the film, LA DOLCE VITA.

3.      Upon information and belief, Defendant Lucas Entertainment, Inc. ("Lucas Entertainment") is a New York corporation with its principal place of business at 589 8th Avenue, 2nd floor, New York, New York, 10018.

4.      Upon information and belief, Defendant Lucas Distribution, Inc. ("Lucas Distribution") is a New York corporation with its principal place of business at 589 8th Avenue, 2nd floor, New York, New York, 10018.

5.      Upon information and belief, Defendant Andrei Treivas Bregman, publicly known as "Michael Lucas" is an individual residing at  244 West 23rd Street, New York, New York 10011.

6.      Upon information and belief, at all relevant times with respect to the offenses alleged in this Complaint, Lucas Entertainment, Lucas Distribution, and Michael Lucas (collectively, the "Lucas Defendants") were acting in concert, with the knowledge and consent of

2

the other Lucas Defendants, such that each and every Defendant is liable and responsible for the acts of the other Lucas Defendants.

## JURISDICTION AND VENUE

7.     This action arises, inter alia, under Section 43 of the Trademark Act of 1946, 15 U.S.C. § 1125, as amended, and under Sections 106 and 501 of the Copyright Act of 1976, 17 U.S.C. §§ 106 and 501.  Subject matter jurisdiction over this complaint arises under Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), Section 502(a) of the Copyright Act, 17 U.S.C. § 502(a), and Sections 1331 (federal question jurisdiction), 1338(a) (trademark infringement), and 1338(b) (unfair competition) and 1367(a) (supplemental jurisdiction over state law claim), of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367(a).

8.     Venue is properly laid in this district under Sections 1391(b)(1) and 1391(c) of the Judicial Code, 28 U.S.C. § 1391(b)(1) and (c).

## BACKGROUND
### FEDERICO FELLINI'S LA DOLCE VITA

9.     LA DOLCE VITA (the "Motion Picture") is a film written and directed by Federico Fellini, who is considered one of the most influential film directors of the Twentieth Century.

10.     Deemed to be one of the most widely seen and acclaimed European movies of the 1960s, LA DOLCE VITA is a highly decorated film.  LA DOLCE VITA won the 1961 Academy Award for 'Costume Design', and was nominated that same year for Academy Awards in the 'Art Direction', 'Writing (Story and Screenplay Written Directly for the Screen)', and 'Directing', categories.   Further, LA DOLCE VITA won the Palme D'Or (Golden Palm) award in 1961 at the Cannes Film Festival, as well as the New York Film Critics Circle Award for 'Best Foreign Film' of 1961.

3

11.     In addition to the above noted accolades, LA DOLCE VITA has been hailed as "one of the all-time classics of European Cinema" by The New York Times, and was voted the 'Sixth Greatest Film' of all time by Entertainment Weekly magazine.  Famed film critic Roger Ebert hailed the film as "one of the finest motion pictures of our time."

12.     LA DOLCE VITA follows the life of tabloid journalist Marcello Rubini (portrayed by Marcello Mastroianni), who covers the glitzy show business life of Rome, while yearning to write more serious articles.  In constant search for the next big scandal or celebrity story, Marcello, usually accompanied by his side kick photographer Signore Paparazzo, is continually seduced by the decadent life led by Rome's pampered rich.  Marcello attaches himself to a series of beautiful women throughout the Motion Picture, while his unsociable girlfriend is incessantly depressed and jealous as she wonders about Marcello's whereabouts.

13.     LA DOLCE VITA's influence on modern culture is well recognized today.  The film is accredited with introducing the term "paparazzi" (characterized by Marcelo's photographer friend Paparazzo in the Motion Picture), to language and modern day society in which the term is used to describe relentless celebrity photographers hovering around celebrities.

14.     The recognition, renown, and fame of the LA DOLCE VITA title has resulted in the film having come to be associated in the minds of a substantial number of people with a certain type of production, written and directed by a particular individual and as such, the LA DOLCE VITA mark has acquired distinctiveness.  In all respects, LA DOLCE VITA is considered to be, and continues to remain a famous motion picture of the Twentieth Century.

### INTERNATIONAL MEDIA FILMS AND LA DOLCE VITA

15.     In 2001, International Media Films, a respected film distribution company specializing in renowned, classic motion pictures, acquired all right, title and interest in and to

the film, LA DOLCE VITA by way of a deed of transfer, for a territory comprising the entire

world excluding Italy, Belgium, Luxembourg and France (the "Territory").

16.     Accordingly, since 2001, International Media Films has been the rightful owner

of all intellectual property rights in and to LA DOLCE VITA in the Territory, and considers LA

DOLCE VITA a fundamental title in its treasured film library.

17.     International Media Films holds a certificate of copyright registration for LA

DOLCE VITA and has not relinquished any ownership rights in the film.  A true and correct

copy of International Media Film's registration certificate issued by the United States Copyright

Office is annexed hereto as Exhibit A.

18.     Since at least as early as 2001, International Media Films and/or its authorized

United States distribution company Koch Lorber Films, LLC ("Koch Lorber") has prominently

displayed the LA DOLCE VITA title and mark in commerce in connection with the advertising,

sale, marketing, and exploitation of the film throughout the Territory.  In this regard, films

bearing Plaintiff's LA DOLCE VITA mark are distributed through interstate commerce and are

available for consumers to purchase and/or rent both in traditional retail outlets as well as online

at such mainstream consumer websites such as www.amazon.com, www.blockbuster.com, and

www.netflix.com.

19.     International Media Films, through Koch Lorber, has sold approximately Seventy

Thousand (70,000) units of the LA DOLCE VITA film, in digital video disc format ("DVD"), in

the last eighteen months alone.

20.     Further, International Media Films maintains a successful and lucrative licensing

program with regard to LA DOLCE VITA through which it has licensed particular uses of the

Motion Picture to third party film companies, major advertising agencies, museums, and the

Ministry of Culture of Spain.

21.    International Media Films has not authorized any of the Lucas Defendants to use the LA DOLCE VITA mark nor has it engaged in any licensing negotiations or transactions with the Lucas Defendants.

22.    International Media Films has successfully continued exclusively to exploit, in a myriad of ways, its copyright and trademark rights in LA DOLCE VITA so that the film has maintained its high-quality reputation as an iconic classic. Further, the LA DOLCE VITA title continues to be sufficiently well known so that consumers associate it with a certain type of production, written and/or directed by a particular individual. Through International Media Films' extensive publicity, exploitation and use of the LA DOLCE VITA film title, LA DOLCE has acquired distinctiveness.

## THE LUCAS DEFENDANTS' WILLFUL INFRINGEMENT OF PLAINTIFF'S TRADEMARK RIGHTS IN LA DOLCE VITA

23.    Upon information and belief, The Lucas Defendants recently began marketing, promoting, advertising and selling explicit, 'hardcore' pornographic films entitled, "Michael Lucas' LA DOLCE VITA Part I" and "Michael Lucas' LA DOLCE VITA Part II" (hereinafter, the "Defendants' Films") that accordingly, infringe the LA DOLCE VITA trademark owned by International Media Films.

24.    Upon information and belief, the Lucas Defendants have been involved in the New York pornography business since 1998, when Michael Lucas launched his production company Lucas Entertainment.

25.    Michael Lucas is credited as the Director and Producer of, as well as an Actor in, the Defendants' Films on both the packaging of the physical products (e.g., the DVDs) themselves, and on the Lucas Entertainment website. Images of the Lucas Defendants' product packaging depicted on the Lucas Entertainment website is annexed hereto as Exhibit B.

6

26.    Upon information and belief, the Lucas Defendants offered for sale and/or began selling the Defendants' Films on or around December, 2006 via the on-line "Lucas Entertainment Store" at http://store.lucasentertainment.com.  Pre-orders and orders for the Defendants' Films could be placed either through the Lucas Entertainment website or by phone.

27.    Upon information and belief, the Defendants' Films are available for purchase in this judicial district, and in interstate commerce.   Similar to International Media Films' LA DOLCE VITA, the Defendants' Films are also sold via retail outlets as well as through on-line video retail and rental websites.  In fact, both LA DOLCE VITA and the Defendants' Films, are currently available for sale to consumers through the same "CD Universe" website found at: www.cduniverse.com.  A copy of the webpage from the CD Universe website soliciting sales of LA DOLCE VITA is annexed hereto as Exhibit C.  A copy of the webpage from the CD Universe website soliciting sales of the Defendants' Films is annexed hereto as Exhibit D.

28.    Clearly, the parties' marks and media of goods are identical, in that both parties use LA DOLCE VITA on motion pictures.  In this regard, the Defendants' Films' titles and packaging misappropriates International Media Films' LA DOLCE VITA mark.

29.    Upon information and belief, The Lucas Defendants have embarked on a program to misappropriate to itself a portion of the enormous good will that exists in International Media Films' LA DOLCE VITA, by creating, manufacturing, selling and distributing the Defendants' Films.

30.    Upon information and belief, The Lucas Defendants have availed and continue to avail themselves of the famous reputation of the film LA DOLCE VITA, as well as International Media Films' favorable reputation as a credible and respected film production and distribution company, in order to sell their pornographic films.

31.    The Lucas Defendants' use of the LA DOLCE VITA mark began long after the film LA DOLCE VITA was released in 1960, as well as long after Plaintiff's acquisition of the film in 2001. The Lucas Defendants have engaged in and continue to engage in all of the foregoing activities without Plaintiff's consent, permission, or authority. Moreover, The Lucas Defendants' have engaged in, and continue to engage in, all of the foregoing activities with full knowledge of and intentional disregard for Plaintiff's rights in the LA DOLCE VITA mark.

32.    Immediately upon discovery of the Lucas Defendants' infringing use of the LA DOLCE VITA title, Plaintiff demanded, and continues to demand, that the Lucas Defendants cease all such infringing uses of Plaintiff's LA DOLCE VITA mark.

33.    Despite Plaintiff's demands, the Lucas Defendants continue to knowingly and deliberately infringe upon Plaintiff's LA DOLCE VITA mark with complete and total disregard for Plaintiff's rights.

34.    For example, a message dated January 17, 2007 (one month after International Media Films' counsel sent a letter to Mr. Lucas), posted by Michael Lucas on his "web blog", informed readers that scenes from the Defendants' Films would be made available for viewing on-line. This obviously evidences the Lucas Defendants decision to continue to use, and thus to willfully infringe the LA DOLCE VITA mark after learning of Plaintiff's ownership thereof.

35.    Furthermore, on January 23, 2007, Michael Lucas posted a second message on his "web blog" which stated the following:

> "If you thought the first scene from my **La Dolce Vita** with Ben Andrews and Jack McCarthy was hot, the second scene is just as sweaty and even dirtier. Members of my site will see Chad Hunt and Rod Barry do what they do best in a film with 14 GayVN nominations. Enjoy!"

8

The January 23rd message posted by Michael Lucas evidences not only the Lucas Defendants' continuing acts of bad faith and willful infringement, but also depicts use by the Lucas Defendants of the LA DOLCE VITA mark as a stand alone title (i.e., without any identifiers, or use of the Lucas name) of the Defendants' Films. (Indeed, Defendants accompany their infringing use of the LA DOLCE VITA title with the "Michael Lucas" name; however, there are times when the LA DOLCE VITA mark is used alone in association with the Defendant's Films, as the above noted web blog message reveals.) Further, use of the LA DOLCE VITA title alone also appears within the Defendant's Films themselves, as the viewer sees only the LA DOLCE VITA title portrayed on one screen shot in the beginning of each of the Defendants' Films.

36.    Upon information and belief, the Lucas Defendants' unauthorized use of Plaintiff's LA DOLCE VITA mark has caused and is likely to cause confusion and mistake among consumers as to source, sponsorship, and approval of the Lucas Defendants' goods as well as to an affiliation, connection, or association between the Lucas Defendants and Plaintiff - all to Plaintiff's substantial harm.

37.    Upon information and belief, the Lucas Defendants' use of Plaintiff's LA DOLCE VITA mark has caused and is causing actual confusion among consumers, whereby the public is deceived into believing that the Defendants' Films are produced, provided, endorsed or authorized by Plaintiff.  For example, upon information and belief, on November 13, 2006 the following messages were posted on the Internet Movie Database ("IMDB") (http://imdb.com/) message board devoted to LA DOLCE VITA:

> O my god, no please, no ! tell me this is not true, please no ! Hollywood crap remaking fellini, this [has] got to be false !! Hopefully, fellini will not see this. wait, i didn't understand ! correct me if i'm wrong (I hope I am) is this a porno ?

9

It's a GAY PORNO, though with enough sense to have Sylvia still be played by a woman... Even though it is Savanna Samson.

38.     As evidenced by the above, the Lucas Defendants have continued to use a trademark that is confusingly similar to International Media Films' LA DOLCE VITA mark in connection with goods and services that are competitive with and are closely related to International Media Films' goods and services despite the Lucas Defendants' knowledge of International Media Films' superior rights in the LA DOLCE VITA mark and express written request to cease all use of the LA DOLCE VITA mark.

39.     Also as evidenced by the above, the Lucas Defendants' use of the LA DOLCE VITA title deprives, and will increasingly deprive Plaintiff of the benefit of the goodwill of the LA DOLCE VITA title.  Further, the Lucas Defendants' use of the LA DOLCE VITA title tarnishes and will increasingly tarnish Plaintiff's LA DOLCE VITA title.

40.     In sum, upon information and belief, the aforesaid conduct of the Lucas Defendants was undertaken in bad faith, with intent to confuse, dilute, and trade on International Media Films' reputation and goodwill in and to the LA DOLCE VITA mark, and is therefore willful.

41.     Further, upon information and belief, the Lucas Defendants have profited from their acts of infringement entitling Plaintiff to an award of its actual and enhanced damages, costs, as well as and any additional profits of the Lucas Defendants under 15 U.S.C § 1117(a).

## THE LUCAS DEFENDANTS' WILLFUL INFRINGEMENT OF PLAINTIFF'S COPYRIGHT IN LA DOLCE VITA

42.     International Media Films holds a certificate of copyright registration for LA DOLCE VITA and has not relinquished any ownership rights in the Motion Picture nor has it engaged in any licensing negotiations or transactions with the Lucas Defendants.  A true and

10

correct copy of International Media Films' copyright registration certificate issued by the United States Copyright Office is annexed hereto as Exhibit A.

43.    Upon information and belief, the Lucas Defendants have performed, published, sell, offer for sale and distribute a substantially similar, unauthorized copy of the film LA DOLCE VITA without permission from International Media Films, the copyright owner.

44.    The Lucas Defendants' acts of infringement constitute simple misappropriation of LA DOLCE VITA that in no way resonates any degree of social commentary or criticism.  Nor can the Defendants' Films  be interpreted to imitate, for the purposes of comic effect or ridicule, LA DOLCE VITA, or in any way have critical bearing on the substance or style of LA DOLCE VITA.

45.    Upon information and belief, Michael Lucas had access, and has in fact, conceded access to the film LA DOLCE VITA.  In this regard, Michael Lucas himself has stated that the Defendants' Films are "better than the original" film in an interview with New York Magazine. In fact, the Lucas Films were announced on the Lucas Defendants' website in the following manner:

> Based on the classic tale of sex, glamour, and debauchery, Lucas Entertainment's next major film Michael Lucas' La Dolce Vita is set to include all the fabulous fashion and high production values you've come to expect from New York City's premiere gay adult entertainment company.

Further, the product packaging of the Defendants' Films  state that the Lucas Films are "[i]nspired by the classic tale of sex, glamour and debauchery...."  Clearly "the classic tale" noted by the Lucas Defendants is a direct reference to International Media Films' LA DOLCE VITA.

11

46. The Defendants' access to the film LA DOLCE VITA, perhaps best explains the overwhelming number of similarities between the Defendants' Films and LA DOLCE VITA which have been recognized not only by Plaintiff, but by a variety of third parties unrelated to this action.

47. The Defendants' Films have been recognized as a "remake" of LA DOLCE VITA in a number of third party published articles. For example, the <u>New York Post</u> wrote that "Lucas Entertainment ...is producing an adult-version *remake* of the LA DOLCE VITA" (emphasis added). A copy of this article is annexed hereto as Exhibit E. Website 'Fleshbot' recognized that the Defendants' Films adhere "loosely to many of the plot details of the original." A copy of this article is annexed hereto as Exhibit F. Website xfactor.com, in its review of the Defendants' Films, affirmed that the Lucas Films' "screenplay does a remarkable job of remaining faithful [to] the structure and feel of the original story..." A copy of this article is annexed hereto as Exhibit G.

48. The above noted reviews of the Defendants' Films are accurate. Similar to LA DOLCE VITA, the Defendants' Films portray a writer, dissatisfied by his career, as the main character "Max Todd" (played by Michael Lucas). Max Todd, like Marcello Rubini, writes articles centered on showbiz (e.g., Hollywood celebrities), and also like Marcello Rubini, is continually seduced by the decadent lifestyle of wealthy friends and celebrities whom he encounters through his chosen profession. In addition to misappropriating the main character, the Defendants' Films siphon a variety of other supporting characters; notable examples of which are: a wealthy lover/companion who (along with Marcello/Max) 'picks up' a prostitute (or "trick" as referred to by the Lucas Defendants), an unsociable, jealous, dissatisfied lover/partner who is unremittingly angry with the leading man, and a mentor-type figure to the main character

who, despite having a polished facade, suffers from a serious mental incapacity that results in a
tragic event.

49.    The non-pornographic portions of the Lucas Defendants' Films evidence
similarity to LA DOLCE VITA to a remarkable degree and level of detail. In addition to
characters, the Defendant's Films depict scenes virtually identical in nature to those portrayed in
LA DOLCE VITA. Further, the Lucas Defendants have gone to the extreme of misappropriating
dialogue from such original scenes and incorporating it into Defendants' Films as if it was their
own so that the end result is a scene which appears to be an exact replica, albeit a modernized
version, of the original scene portrayed in LA DOLCE VITA.

50.    For example, one scene portrayed in LA DOLCE VITA depicts Marcello and
Maddalena (Marcello's wealthy lover/companion) leave a club, get into Maddalena's car and
pick up a prostitute who asks Maddalena to drive her home. Maddalena and Max drive the
prostitute home where they have sex in her apartment. Prior to their interaction with the
prostitute, Maddalena states that she would "like to live in a new city. Where [she] do[esn't]
know anyone." She is "fed up … with Rome" and would "like an island." Marcello's response
to Maddalena's complaints is that he "like[s] Rome very much" because "[i]ts …a jungle where
one can hide well." Further, they say:

**"You know what your problem is? You have too much money." –Marcello (to Maddalena)**
**"And your problem is you don't have enough." –Maddalena (to Marcello)**

51.    In comparison, a scene portrayed in the Defendants' Films depicts Max and
Cameron (Max's wealthy lover/companion) leave a club and get into Cameron's limousine,
during which time Cameron states that he is "claustrophobic" in Manhattan. Further, they say:

**"Your problem is you have too much money" - Max (to Cameron)**
**"And yours is you don't have enough" – Cameron (to Max)**

13

During their car ride, Max and Cameron proceed to pick up a "trick" (i.e. a person for sex), who asks Cameron for a ride home. Cameron and Max drive the boy home where the three of them have sex in his apartment.

52.     Further, a scene portrayed in LA DOLCE VITA depicts Sylvia, an actress visiting Rome, being interviewed by a number of vociferous reporters in a hotel room while Marcello stands at the back of the room comforting his jealous girlfriend on the phone. Soon after, Marcello and Sylvia are seen at a club, from which Sylvia storms out with Marcello close on her heels. Marcello and Sylvia end up frolicking in the Trevi Fountain, after which Marcello escorts Sylvia home to her hotel only to be struck in the face by Sylvia's jealous lover. Marcello falls to the ground as paparazzi quickly take advantage of the opportunity to take his photograph.

53.     Similarly, the Defendants' Films contain a scene which depicts a Hollywood couple (Ray Star and Savanna Samson), visiting New York, being interviewed by a number of voluble reporters in a hotel room while Max Todd stands at the back of the room comforting his jealous boyfriend on the phone. A short time later, Max and the Hollywood couple are seen at a club,  from which Savanna storms out in a jealous rage with Max close behind. Max and Savanna soon end up frolicking in a fountain in lower Manhattan after which Max escorts Savanna back to the club to an impatiently waiting Ray who jealously punches Max in the face. Max falls to the ground as a photographer quickly takes advantage of the opportunity to take his photograph.

54.     For their own profit and advantage, the Lucas Defendants are misappropriating non-transformed copyrighted material of which International Media Films is the rightful owner, and in which International Media Films has invested heavily in time, energy and resources. The degree of misappropriation to which the Lucas Defendants have engaged far surpasses that

14

which would enable the Lucas Defendants to exercise whatever First Amendment rights they may claim shield them.

55.     By directly copying these various aspects of the story, plot, characters and dialogue of International Media Film's copyrighted work LA DOLCE VITA, the Lucas Defendants have illegally derivated the Motion Picture and have made, copied, displayed and are distributing films substantially similar to that of Plaintiff's LA DOLCE VITA. As a result of such unauthorized appropriation, the Lucas Defendants have violated International Media Films' exclusive rights as a copyright owner to reproduce its work and to prepare derivative works, distribute copies to the public by sale or other transfer of ownership, or by rental, lease, or lending; and perform and display the copyrighted work, LA DOLCE VITA publicly. Accordingly, the acts of the Lucas Defendants constitute copyright infringement under 17 U.S.C. §§ 106 & 501.

56.     Immediately upon discovery of the Lucas Defendants' infringement of the LA DOLCE VITA film, Plaintiff demanded, and continues to demand, that the Lucas Defendants cease all infringing acts that have violated and continue to violate Plaintiff's exclusive copyright in LA DOLCE VITA in the Territory.

57.     Despite Plaintiff's demands, the Lucas Defendants continue knowingly, willfully, and deliberately, to infringe upon Plaintiff's copyright in LA DOLCE VITA with complete and total disregard for Plaintiff's rights.

58.     On January 17, 2007, one month after International Media Films' counsel sent a letter to Michael Lucas demanding that he cease all infringing activity, Michael Lucas posted a message on his "web blog" which informed readers that scenes from the Defendants' Films would soon be made available for viewing on-line. Again, on January 23, 2007, Michael Lucas posted a second message on his "web blog" to inform readers that a second scene was made

15

available for viewing on-line. The Lucas Defendants' decision to continue to display, perform and distribute the Defendants' Films after learning of Plaintiff's ownership of the copyright in LA DOLCE VITA, clearly illustrates the Lucas Defendants' bad faith intent to willfully infringe Plaintiff's copyright.

59.    As a result of the Lucas Defendants' infringing acts, International Media Films is damaged, has suffered, and is suffering irreparable injury.

60.    Further, upon information and belief, the Lucas Defendants have profited from their acts of infringement entitling Plaintiff to an award of its actual and/or statutory damages, any additional profits of the Lucas Defendants, as well as costs and attorneys fees under 17 U.S.C. §§ 412, 504(a)(1) & (b).

### AS AND FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF
#### (False Designation of Origin or Representation under § 43(a) of the Lanham Act)

61.    International Media Films repeats and realleges each and every allegation of paragraphs 1 through 41 of this Complaint with the same force and effect as if set forth in their entireties at this point.

62.    The LA DOLCE VITA title has acquired distinctiveness as it is sufficiently known that consumers associate it with a particular director and/or producer's work and a certain type of production and as such, International Media Films' rights, as holder of the trademark rights to the LA DOLCE VITA mark are infringed by the Defendants' Films.

63.    The Lucas Defendants' use of the LA DOLCE VITA mark for films constitutes the unauthorized use in commerce of Plaintiff's mark LA DOLCE VITA and of a false designation of origin which is likely to cause, and indeed causes confusion, mistake, or deceit as to the affiliation, connection or association of the Defendants' Films with International Media Films' LA DOLCE VITA, or as to the origin, sponsorship or approval of the Defendants' Films

16

by International Media Films in contravention of Section 43(a) of the Trademark Act, 15 U.S.C. §1125(a).

64.     Upon information and belief, the Lucas Defendants adopted the LA DOLCE VITA mark with full knowledge of Plaintiff's prior ownership and use of the LA DOLCE VITA mark. Accordingly, the Lucas Defendants' acts have been willful.

65.     By reason of the acts of the Lucas Defendants alleged herein, International Media Films has suffered, is suffering and, unless the Lucas Defendants are restrained, will continue to suffer, irreparable injury for which there is no adequate remedy at law.

66.     International Media Films is entitled to damages for the Lucas Defendants' infringement and the profits realized from its infringing conduct, both in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (Dilution by Tarnishment under § 43(c)(1) of the Lanham Act)

67.     International Media Films repeats and realleges each and every allegation of paragraphs 1 through 66 of this Complaint with the same force and effect as if set forth in their entireties at this point.

68.     The LA DOLCE VITA title has acquired distinctiveness as it is sufficiently known that consumers associate it with a particular director and/or producer's work and as such, International Media Films' rights, as holder of the rights to the title LA DOLCE VITA are infringed by the Defendants' Films.

69.     The LA DOLCE VITA mark is, and was at the time the Lucas Defendants commenced imitating it, famous within the meaning of Section 43(c)(1) of the Trademark Act, 15 U.S.C. § 1125(c)(1).

70.     The Lucas Defendants' use in commerce of the LA DOLCE VITA mark dilutes the distinctive quality of the LA DOLCE VITA trademark, by both blurring the uniqueness of the mark and tarnishing it by means of extensive incorporation with scenes of explicit sexual activity, all in violation of Section 43(c) of the Trademark Act, 15 U.S.C. § 1125(c), as amended.

71.     By reason of the acts of the Lucas Defendants, International Media Films has suffered, is suffering and, unless the Lucas Defendants are restrained, will continue to suffer, irreparable injury for which there is no adequate remedy at law.

72.     International Media Films is entitled to damages for the Lucas Defendants' past dilution and the profits realized from the Lucas Defendants' conduct, both in amounts to be determined at trial.

### AS AND FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF
### (Trademark Infringement Under New York Law – NY Gen Bus § 360-k)

73.     International Media Films repeats and realleges each and every allegation of paragraphs 1 through 72 of this Complaint with the same force and effect as if set forth in their entireties at this point.

74.     The Lucas Defendants' conduct as aforesaid is likely to cause and has indeed caused confusion or mistake among consumers as to the source of the Defendants' Films or as to the sponsorship, endorsement approval or authorization by, or affiliation with, International Media Films, and/or the LA DOLCE VITA film, in violation of the common law of trademark infringement and unfair competition of New York, and Sections 133 ('Use of name with intent to deceive'), 349 ('Deceptive acts and practices unlawful'), and 350-d ('Civil penalty') of the New York General Business Law.

## AS AND FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### (Injury to Business Reputation; Dilution and Unfair Competition
### Under New York Law – NY Gen Bus § 360-l)

75.     International Media Films repeats and realleges each and every allegation of paragraphs 1 through 74 of this Complaint with the same force and effect as if set forth in their entireties at this point.

76.     The Lucas Defendants' conduct as aforesaid constitutes a likelihood of injury to the business reputation of International Media Films and dilution of the distinctive quality of the LA DOLCE VITA title in violation of Section 360-l of the New York General Business Law.

## AS AND FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF
### (Copyright Infringement Under § § 106 and 501 of The Copyright Act)

77.     International Media Films repeats and realleges each and every allegation of paragraphs 1 through 22 and 42 - 76 of this Complaint with the same force and effect as if set forth in their entireties at this point.

78.     International Media Films owns a valid copyright in LA DOLCE VITA.

79.     International Media Films, as the exclusive copyright owner of LA DOLCE VITA in the Territory, has the exclusive rights to, and to authorize others to prepare derivative works based upon the copyrighted work LA DOLCE VITA; reproduce and distribute copies of the copyrighted work LA DOLCE VITA; and publicly perform and display the copyrighted work, LA DOLCE VITA.

80.     The Lucas Defendants' creation, manufacture, sale, performance, and distribution of the Defendants' Films is in violation of the copyright held by International Media Films in LA DOLCE VITA.

81.     The Lucas Defendants' conduct constitutes willful infringement of International Media Films' copyright in and to the film, LA DOLCE VITA.

19

82.     As a result of the Lucas Defendant's acts of copyright infringement and the foregoing allegations, International Media Films has suffered damages and irreparable harm.

-------------------------

**WHEREFORE,** Plaintiff International Media Films prays that this honorable Court enter its judgment:

A.     Granting each of its claims for relief;

B.     Enjoining, both preliminarily and permanently, Lucas Entertainment, Inc., and all of its officers, directors, affiliates, successors, assigns, agents, servants, employees and those in privity with any of them, from continued infringement, selling, offering to sell, advertising, marketing, streaming or otherwise distributing, any audio-visual works under the name LA DOLCE VITA;

C.     Enjoining, both preliminarily and permanently, Lucas Distribution Inc., and all of its officers, directors, affiliates, successors, assigns, agents, servants, employees and those in privity with any of them, from continued infringement, selling, offering to sell, advertising, marketing, streaming or otherwise distributing, any audio-visual works under the name LA DOLCE VITA;

D.     Enjoining, both preliminarily and permanently, Andrei Treivas Bregman, publicly known as "Michael Lucas" from continued infringement, selling, offering to sell, advertising, marketing, streaming or otherwise distributing, any audio-visual works under the name LA DOLCE VITA;

E.     Ordering a recall of all the Defendants' Films in the marketplace, and the delivery and surrender to International Media Films for destruction of all labels, packaging, sales material, artwork and other material from which such labeling, packaging or advertising materials may be reproduced;

F.    Ordering The Lucas Defendants to deliver up and surrender to International Media Films for destruction all copies manufactured, reproduced, distributed, sold, or otherwise used, intended for use, or possessed with intent to use and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which copies of the Defendants' Films may be made or reproduced, and all electronic, mechanical, or other devices for manufacturing, reproducing, or assembling such copies.

G.    Awarding treble damages actually suffered by International Media Films as well as the Lucas Defendants' profits from the sale of the Defendants' Films, or such greater amount as to which the Court may consider International Media Films to be entitled;

H.    Awarding to International Media Films and assessing against the Lucas Defendants' the costs, expert witness fees, and reasonable attorneys' fees incurred in connection with this action; and

I.    Granting such other and further relief as this Court deems fair, just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff, International Media Films, as provided by Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury in the above captioned matter.

Respectfully submitted,

**FISH & RICHARDSON P.C.**

Dated: February 15, 2007
     New York, New York

_____
Raymond R. Castello  (RC2106)
Anthony L. Fletcher  (AF2969)

153 East 53rd Street, 52nd Floor
New York, New York 10022
tel (212)641-2261
fax (212)258-2291
*Attorneys for Plaintiff*
*International Media Films, Inc.*

21