UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

INTERNATIONAL MEDIA FILMS, INC.,

                        **Plaintiff,**          07 Civ. 1178 (JGK)

           - against -              MEMORANDUM OPINION AND
                                               ORDER

LUCAS ENTERTAINMENT, INC., ET AL.,

                       **Defendants.**
─────────────────────────────────

JOHN G. KOELTL, District Judge:

    International Media Films, Inc. ("IMF" or "the plaintiff"), the purported owner of the copyright to Federico Fellini's classic film La Dolce Vita ("the Fellini film"), alleges copyright infringement and related claims against the defendants Lucas Entertainment, Inc., Lucas Distribution, Inc., and Andrei Treivas Bregman, known as Michael Lucas (collectively, "Lucas Entertainment" or "the defendants"). IMF maintains that its copyright is violated by the defendants' two-part pornographic film Michael Lucas' La Dolce Vita ("the Lucas film"). IMF brings claims for false designation of origin and dilution by tarnishment under §§ 43(a) & (c)(1) of the Lanham Act, 15 U.S.C. § 1125, trademark infringement, injury to business reputation, dilution, and unfair competition in violation of New York General Business Law §§ 360-k & 360-l, and copyright infringement under §§ 106 and 501 of the Copyright Act, 17 U.S.C. § 101, et seq. The defendants counterclaim for

cancellation of the plaintiff's copyright registration, alleging that the plaintiff does not have rights to the copyrighted film.

On May 29, 2007, the Court denied the plaintiff's motion for a preliminary injunction, finding insufficient irreparable harm for a preliminary injunction, in part due to the plaintiff's unreasonable delay in filing suit and failure to show a likelihood of marketplace confusion.

The defendants move for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. The gist of the defendants' motion is that the plaintiff cannot prove that it owns the copyright to the Fellini film, a film that was indisputably in the public domain in the United States prior to 1996. The plaintiff cross moves to strike certain of defendants' summary judgment evidence.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential

Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Heicklen v. Toala, No. 08 Civ. 2457, 2010 WL 565426, at *1 (S.D.N.Y. Feb. 18, 2010).

Summary judgment is appropriate if it appears that the nonmoving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court

must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving part meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Heicklin, 2010 WL 565426, at *1.

## II.

The following facts are undisputed unless otherwise noted.

The parties do not dispute that the Fellini film was produced by Riama Film S.P.A. ("Riama") as principal producer,

4

Société Nouvelle Pathé Cinema, and Gray Film S.A. (collectively, "the Co-Producers"). (Defs.' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1 Stmt.") ¶ 14; Pl.'s Resp. to Defs.' 56.1 Stmt. ("Pl.'s 56.1 Stmt.") ¶ 14; Pl.'s Statement of Additional Material Facts ("Pl.'s Additional 56.1 Stmt.") ¶ 1.) The parties also do not dispute that the Fellini film was in the public domain in the United States prior to January 1, 1996. (Defs.' 56.1 Stmt. ¶ 4; Pl.'s 56.1 Stmt. ¶ 4.)

The Lucas film contains sexually explicit depictions that are not present in the Fellini film, and which occupy the majority of the running time of the Lucas film. (Defs.' 56.1 Stmt. ¶¶ 64, 95; Pl.'s 56.1 Stmt. ¶¶ 64, 95.) The Lucas film is primarily marketed and sold through stores, distributors, and websites that specialize in adult films, although it has been publicized in some non-adult media. (Defs.' 56.1 Stmt. ¶¶ 66-67; Pl.'s 56.1 Stmt. ¶¶ 66-67.) There is no evidence that any consumer has returned either film on the grounds that the consumer was confused about its contents. (Defs.' 56.1 Stmt. ¶¶ 68-69; Pl.'s 56.1 Stmt. ¶¶ 68-69.) Retailers and distributors of the Lucas film generally do not stock the Fellini film. (Defs.' 56.1 Stmt. ¶ 96; Pl.'s 56.1 Stmt. ¶ 96.)

The defendants identify several other releases in the United States of the Fellini film, other films based on the

Fellini film, or with the same or similar titles, which the
plaintiff has not targeted for copyright infringement claims.
(Defs.' 56.1 Stmt. ¶¶ 49-63, 97-102; Pl.'s 56.1 Stmt. ¶¶ 49-63.)

### A.

     IMF alleges that it is the rightful holder of the copyright
to the Fellini film in the United States.

     The parties agree that on March 9, 1962 Riama assigned to
Cinemat, S.A. ("Cinemat"), in the Riama-Cinemat agreement, all
global economic rights to the Fellini film Riama then
controlled, excluding rights in Italy and its ex-colonies,
France and its ex-colonies, Belgium, Luxembourg, and vessels
flying the Italian flag. (Defs.' 56.1 Stmt. ¶ 22; Pl.'s 56.1
Stmt. ¶ 22; Pl.'s Additional 56.1 Stmt. ¶¶ 2, 8.)

     The plaintiff alleges that on December 9, 1980 Cinemat
transferred all of its rights to Hor A.G. ("Hor") in a written
agreement ("the Cinemat-Hor agreement"). (Pl.'s Additional 56.1
Stmt. ¶ 9; Leone Decl. Ex. C, Feb. 21, 2008.) IMF has produced
a photocopy of what purports to be a certified copy of the
Cinemat-Hor agreement, the original of which is allegedly on
file with the Public Register of Liechtenstein. (Leone Decl.
Ex. C, Feb. 21, 2008.) Alfredo Leone, the sole shareholder of
IMF, testified that IMF is unable to produce an original copy of

the Cinemat-Hor agreement.  (Defs.' 56.1 Stmt. ¶ 32; Butterfield Decl. Ex. 12 at 250-51, 253, Feb. 1, 2008.)

Dr. Bernd Hammermann, Head of the Land Registry and Public Register Office of Liechtenstein, examined the certified copy of the Cinemat-Hor agreement and has contacted the Public Prosecutor's Office of Liechtenstein because Dr. Hammermann doubts the authenticity of the certified copy.  (Lucas Decl. Ex. 2, Feb. 1, 2008.)  According to Dr. Hammermann, a certified copy of the document bearing the Public Register's stamp would verify that an official from the Public Register compared the stamped copy to the original on file with the Public Register.  (Lucas Decl. Ex. 2, Feb. 1, 2008.)  Dr. Hammermann doubts the authenticity of the certified copy because it uses the abbreviation "Dec. 1980" for December rather than the German "Dez." that typically would be used in Liechtenstein, because the fee quoted is higher than the fee charged by the Public Register of Liechtenstein in December 1980, and because the signature from the Public Register is of an employee who was hired by the Public Register after December 1980.  (Lucas Decl. Ex. 2, Feb. 1, 2008; Leone Decl. Ex. C, Feb. 21, 2008; Defs.' 56.1 Stmt. ¶¶ 84-87; Pl.'s 56.1 Stmt. ¶¶ 84-87.)  Dr. Hammermann does not indicate whether there is an original of the Cinemat-Hor agreement on file with the Public Register, or, if so,

whether IMF would be able to obtain a certified copy of it. (Lucas Decl. Ex. 2, Feb. 1, 2008.)

IMF produced a December 1980 declaration of Bruno A. Hugi, the administrator of Cinemat, declaring that Cinemat transferred all rights in the subject and script of the Fellini film to Hor. (Pl.'s Additional 56.1 Stmt. ¶¶ 9-10; Leone Decl. Ex. D, Feb. 21, 2008.) However, Italian lawyer Luciano Daffarra questions the validity of the Hugi declaration because the signature did not match the requirements of Italian law, because under Italian law the notarization merely indicates that the document was signed on the indicated date rather than the veracity of the document, and because the declaration recites a payment amount that is only $1/100^{th}$ the amount Hugi received during the sale of the same rights to Astor Pictures. (Daffarra Decl. ¶¶ 42-48, Jan. 1, 2008.) He also notes that the Hugi declaration is not an authentication of the purported Cinemat-Hor agreement, which is not a part of that declaration. (Daffarra Decl. ¶ 48, Jan. 1, 2008.)

The plaintiff alleges that Hor transferred its rights in the Fellini film to Oriental Films S.r.l. ("Oriental Films") by a written agreement dated November 20, 1981 ("the Hor-Oriental agreement"). (Pl.'s Additional 56.1 Stmt. ¶¶ 11-12; Leone Decl. Exs. E-F, Feb. 21, 2008.)

IMF maintains that Oriental Films granted the right to lease and sell the Fellini film to Cinestampa Internazionale S.r.l. ("Cinestampa") in a letter dated October 23, 1997, and that Oriental Films transferred all of its rights in the Fellini film to Cinestampa on January 7, 1998 ("the Oriental-Cinestampa agreement"). (Pl.'s Additional 56.1 Stmt. ¶¶ 13-15; Leone Decl. Exs. G-I, Feb. 21, 2008.) Daffarra declared that there are reasons to think both the Hor-Oriental agreement and Oriental-Cinestampa agreement instruments are not authentic, including IMF's failure to produce the power of attorney allegedly authorizing the Hor-Oriental transfer and the failure to enter the chain of title documents in the Italian Society of Authors and Publishers ("SIAE") registration. (See Daffarra Decl. ¶¶ 50-59, Jan. 1, 2008.)

Finally, the plaintiff alleges that Cinestampa transferred its rights in the Fellini film to IMF on September 20, 2001. (Pl.'s Additional 56.1 Stmt. ¶ 16; Leone Decl. Ex. J, Feb. 21, 2008.) The plaintiff also alleges that the transfer from Cinestampa to IMF was verified in a declaration notarized on September 7, 2005. (Pl.'s Additional 56.1 Stmt. ¶ 17; Leone Decl. Ex. K, Feb. 21, 2008.) IMF produced a 2005 letter from Nicola Rocchetti, an Italian lawyer for Cinestampa, concluding that IMF owned all economic rights to the Fellini film outside of Italy and its former colonies, Belgium, Luxembourg, and

France and its former colonies.  (Pl.'s Additional 56.1 Stmt. ¶ 18; Leone Decl. Ex. L, Feb. 21, 2008.)  The unsworn letter recites the documents provided to the lawyer by Cinestampa, including the purported Cinemat-Hor agreement, but does not purport to discuss any of the alleged challenges to any of the documents.  IMF has produced no evidence from any person with personal knowledge of the transfers in its purported chain of title except for the final link of the transfer from Cinestampa to IMF.

The United States Copyright Office received IMF's registration of the restoration copyright to the Fellini film on December 26, 2002.[1]  (Pl.'s Additional 56.1 Stmt. ¶ 21; Leone Decl. Ex. N, Feb. 21, 2008.)  In a later dated March 9, 2004, the Copyright Office notified IMF that the Fellini film was already registered to Republic Entertainment, Inc. as of April 27, 1998.  (Butterfield Decl. Ex. 34, Feb. 1, 2008.)

---

[1] After the Uruguay round of GATT negotiations, Congress passed the Uruguay Round Agreements Act ("URAA") amending § 104A of the Copyright Act to bring the United States into compliance with the Berne Convention.  The purpose of § 104A was to restore copyrights for foreign works previously in the public domain in the United States due to noncompliance with certain formalities such as notice of copyright under United States copyright law.  See Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 153 (2d Cir. 2007).  Restored copyrights were effective January 1, 1996 for works that met the requirements of § 104A. See 17 U.S.C. § 104A(h)(2)(A).

**B.**


The defendants trace a conflicting chain of title to the Fellini film through a series of transactions culminating in ownership by Paramount Pictures Corporation ("Paramount"), an account that the plaintiff disputes in its entirety.  The defendants allege that the Co-Producers of the Fellini film first assigned distribution rights to the Fellini film in the United States and Canada to Astor Pictures International ("API") by an agreement dated January 7, 1961 ("the 1961 Cineriz-API agreement"), with Cineriz as the sales agent for the Co-Producers.  (Defs.' 56.1 Stmt. ¶ 17.)  However, as the plaintiff points out, the defendants have not produced the 1961 Cineriz-API agreement to the Court.  (Pl.'s 56.1 Stmt. ¶ 17.)  The defendants also maintain that on January 8, 1962 API obtained broader rights to the Fellini film from Cinemat.  (Defs.' 56.1 Stmt. ¶ 21; Pacacha Decl. Ex. 1.)

The defendants allege that API assigned all of its rights in the Fellini film, including the rights assigned to API in the 1961 Cineriz-API agreement, to Astor Pictures, Inc. ("Astor Pictures") on January 11, 1962.  (Defs.' 56.1 Stmt. ¶ 18; Pacacha Decl. Ex. 3.)  Astor Pictures distributed the Fellini film in an English-subtitled version throughout the United States beginning in April 1961, marking the debut of the film in

the United States.  (Defs.' 56.1 Stmt. ¶¶ 19-20; Pl.'s 56.1 Stmt. ¶¶ 19-20; Butterfield Decl. Ex. 14, Feb. 1, 2008.)

The parties agree that on March 9, 1962 Riama assigned to Cinemat in the Riama-Cinemat agreement all global economic rights to the Fellini film that Riama then controlled excluding rights in Italy and its ex-colonies, France and its ex-colonies, Belgium, Luxembourg, and vessels flying the Italian flag. (Defs.' 56.1 Stmt. ¶ 22; Pl.'s 56.1 Stmt. ¶ 22; Pl.'s Additional 56.1 Stmt. ¶¶ 2, 8.)

According to the defendants, Astor Pictures' rights were transferred to Ardisco Financial Corp. ("Ardisco"), which created an English-dubbed version of the Fellini film that it released for distribution in the United States in 1966.  (Defs.' 56.1 Stmt. ¶ 25; Pacacha Decl. Ex. 6; Butterfield Decl. Ex. 41, Feb. 1, 2008.)

Ardisco's rights were later acquired by Republic Entertainment, Inc. ("Republic"), which registered and renewed the copyright in the English subtitled and dubbed versions of the Fellini film.  (Defs.' 56.1 Stmt. ¶¶ 26-27; Pl.'s 56.1 Stmt. ¶¶ 26-27; Pacacha Decl. Ex. 6.)  Republic also registered its claim to a restored copyright in the original Italian version of the Fellini film in 1998.  (Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28; Butterfield Decl. Ex. 36, Feb. 1, 2008.)

The defendants allege that Paramount Pictures Corp. ("Paramount") has controlled Republic's film library since 2000, although the plaintiff disputes this claim. (Defs.' 56.1 Stmt. ¶ 30; Pl.'s 56.1 Stmt. ¶ 30.)

## C.

IMF brings claims for false designation of origin and dilution by tarnishment under §§ 43(a) and (c)(1) of the Lanham Act, 15 U.S.C. § 1125, trademark infringement, injury to business reputation, dilution, and unfair competition in violation of New York General Business Law §§ 360-k & 360-l, and copyright infringement under §§ 106 and 501 of the Copyright Act, 17 U.S.C. § 101, et seq. The defendants counterclaim for cancellation of the plaintiff's copyright registration, alleging that the plaintiff does not have rights to the copyrighted film.

On May 29, 2007, this Court denied the plaintiff's motion for a preliminary injunction, finding insufficient irreparable harm for a preliminary injunction in part due to the plaintiff's unreasonable delay in filing suit and a failure to show a likelihood of marketplace confusion.

The defendants move for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56, arguing that the plaintiff cannot show it owns the copyright to the Fellini film

and that the Fellini and Lucas films are not substantially similar. The plaintiff opposes the motion and cross moves to strike certain of defendants' summary judgment evidence.

### III.

### A.

The ownership of a copyright is generally determined under the laws of the state with the most significant relationship to the property and the parties, but the scope of protection afforded to the copyright owner is determined by the laws of the state in which infringement is alleged to have occurred. <u>See</u> <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 153 F.3d 82, 90-91 (2d Cir. 1998) (applying Russian law to issue of copyright ownership and American law to infringement issue). The parties agree that the Fellini film was in the public domain on January 1, 1996. The plaintiff claims it was restored to copyright protection according to legislation enacted in the United States to implement the obligations of the United States under the URAA. After the Uruguay round of GATT negotiations, Title 17 of the United States Code was amended in part to provide that "[a] restored work vests initially in the author or initial rightholder of the work as determined by the law of the

14

source country of the work." 17 U.S.C. § 104A(b).  The source country of the Fellini film and screenplay is Italy.

The plaintiff bears the burden of proving both that the plaintiff owns a valid copyright and that the defendants have infringed that copyright.  See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 108-09 (2d Cir. 2001).  The defendants argue that the plaintiff has not provided a valid chain of title to demonstrate that IMF owns a valid copyright in the Fellini film. Ordinarily, a copyright registration is presumed valid and it is the alleged infringer who bears the burden of proving invalidity of the registration.  See Hamil Am. Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999); see also 17 U.S.C. § 410(c).  However, copyright registration is not prima facie evidence of ownership of a valid copyright when the registration, like the registration of the restored copyright here, is made more than five years after the original publication.  See Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 154 n.5 (2d Cir. 2007); see also 17 U.S.C. § 410(c).[2] Moreover, a transferee plaintiff in a copyright infringement action must prove that the copyright was properly transferred to the plaintiff.  See Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc., No. 87 Civ. 5775, 1989 WL 117704, at *1 (S.D.N.Y. Oct. 2,

---

[2] While it is possible for a registration made more than five years after first publication to carry some evidentiary weight, see Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 154 n.5 (2d Cir. 2007), the registration here carries no such weight, and the plaintiff has not argued that it does.  Indeed, the Copyright Office notified IMF that it had received a registration for the Fellini film more than four years before from Republic Entertainment.

1989) (dismissing complaint when plaintiff failed to prove transfer of copyright).

The defendants argue that summary judgment is warranted because the plaintiff has not produced any admissible evidence of the Cinemat-Hor agreement, the Hor-Oriental agreement, or the Oriental-Cinestampa agreement.

The defendants allege that the photocopy of the certified copy of the Cinemat-Hor agreement produced by IMF is a photocopy of a forgery. IMF has produced a photocopy of what purports to be a certified copy of the Cinemat-Hor agreement. The original agreement is allegedly on file with the Public Register of Liechtenstein, although Leone acknowledges that IMF is unable to produce an original signed version of the agreement. The defendants have produced the opinion of Dr. Bernd Hammermann, the head of the Public Register in Liechtenstein, who notes that a certified copy would ordinarily bear the Public Register's stamp verifying that an official with the Public Register had compared the certified copy with the original on file. IMF produced what purports to be a photocopy of the certified copy of the Cinemat-Hor agreement, but Dr. Hammermann has referred the matter to the authorities in Liechtenstein because he believes that the document is a forgery. Dr. Hammermann notes that the alleged certified copy uses the English abbreviation "Dec." for "December" rather than the German "Dez.," which would

have been standard in Liechtenstein. Moreover, the document recites a fee which was not in effect on the date the document purports to have been signed, and bears the signature of an official who was not working for the Public Register on that date.

The document submitted by IMF purports to be a photocopy of a certified copy of the Cinemat-Hor agreement. Under Federal Rule of Evidence 1003, a duplicate, such as a photocopy, is admissible in the same circumstances where the original would be admissible unless, among other reasons, "a genuine question is raised as to the authenticity of the original." Fed. R. Evid. 1003. The defendants argue that the plaintiff's version of the Cinemat-Hor agreement is inadmissible because it is a duplicate of the certified copy and genuine questions have been raised regarding the authenticity of the original—in this case, the alleged certified copy of the agreement that IMF has photocopied to submit to this court. See Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 371 (2d Cir. 2003) (duplicate inadmissible when genuine questions raised as to authenticity of original pursuant to Rule 1003); Pro Bono Invs., Inc. v. Gerry, No. 03 Civ. 4347, 2005 WL 2429777, at *5 (S.D.N.Y. Sept. 30, 2005) (duplicate inadmissible pursuant to Rule 1003 when genuine questions raised as to authenticity of original, including questions as to why original could not be produced).

The plaintiff has submitted no first hand testimony regarding the Cinemat-Hor agreement, and therefore cannot prove the Cinemat-Hor transfer if the copy of the agreement submitted here is inadmissible. The Hugi declaration does not fill the evidentiary gap. On its face the Hugi declaration is hearsay and is not admissible, nor is there any basis to believe that Mr. Hugi could be produced to testify at trial thirty years after his declaration. Further, the declaration itself does not purport to authenticate the specific document on which the plaintiff attempts to rely for its chain of title. Moreover, there are reasons to question the authenticity of the document, including the improper signature and small fee recital.

The plaintiff responds that Rule 1003 must be read in conjunction with Rule 1004, which excuses the production of an original when the original is lost or destroyed and there is no allegation of bad faith, or when the original cannot be obtained by available judicial processes. See Fed. R. Evid. 1004. However, IMF has not explained why it believes that the original Cinemat-Hor agreement allegedly on file with the Public Register of Lichtenstein is lost or destroyed, or why the original cannot be obtained from Lichtenstein by judicial processes. See Wesco Distribution, Inc. v. Anshelewitz, No. 06 Civ. 13444, 2008 WL 2775005, at *9 (S.D.N.Y. July 16, 2008) (duplicate admissible under Rule 1004 to prove contents of original when original lost

18

or destroyed).  Ultimately, if there were an authentic Cinemat-Hor agreement, the plaintiff should be able to obtain a certified copy of the original on file in Liechtenstein without attempting to rely on a photocopy of a questionable certified copy.  Without some reason to believe that the original is lost or otherwise unavailable, Rule 1004 is inapplicable in this case.  Under Rule 1003, the copy of the certified copy is inadmissible because questions have been raised about the authenticity of the certified copy.

When IMF's copy of the Cinemat-Hor agreement is excluded, IMF's chain of title is missing a crucial link and therefore IMF has failed to establish by a preponderance of the evidence that it holds a valid copyright.  Because at trial IMF would bear the burden of proving that it holds a valid copyright, summary judgment for the defendants is appropriate on IMF's copyright claims.

The defendants also argue that the Hor-Oriental and Oriental-Cinestampa agreements present gaps in IMF's chain of title because the plaintiff has not provided originals of these documents.  The defendants cite to the declaration of Luciano Daffarra, an Italian lawyer.  The Daffarra Declaration opines that there are various reasons to be suspicious of the purported Hor-Oriental and Oriental-Cinestampa agreements, including IMF's failure to produce the power of attorney allegedly authorizing

the Hor-Oriental transfer and the failure to enter the chain of title documents on the SIAE registration.  (See Daffarra Decl. ¶¶ 50-59, Jan. 1, 2008.)  The plaintiff has failed to provide the originals of these documents or to respond to the questions raised about their authenticity, but Daffarra's declaration provides additional support for the conclusion that IMF cannot prove its chain of title because of the inadmissibility of copies of these two additional links in the plaintiff's alleged chain of title.

The plaintiff also relies on the expert report of law professor Peter Jaszi, who opines that "IMF now stands in the shoes of the motion picture's original producer, Riama Film S.P.A., where U.S. domestic copyright is concerned."  (McCallion Decl. Ex. 2 at ¶ 10.)  In arriving at this conclusion, Professor Jaszi relies on the transfer instruments submitted to this Court.  However, the report does not examine whether those transfer instruments are themselves authentic or admissible. Indeed, Professor Jaszi's opinion concerns primarily the scope of Italian copyright law.  He explains his expertise as "domestic, comparative and international copyright law . . . ." (McCallion Decl. Ex. 2 at ¶ 1.)  He does not purport to be an expert document examiner.  To the extent that he refers to the documents of title, he describes them as a "clear and apparently undisputed chain of assignments."  (McCallion Decl. Ex. 2 at ¶

10.)  The chain is certainly not "undisputed."  There is no basis to believe that Professor Jaszi has provided an opinion as to the legitimacy of any of the documents or that he has the expertise to do so.

### B.

The defendants present evidence of that the chain of title to the Fellini film runs from Riama to Paramount through Astor Pictures and Republic, among others.  The defendants do not have to prove that Paramount is in fact the owner of the copyright to prevail on this motion.  In fact, it is possible for the Fellini film to be in the public domain.  See Metro-Goldwyn-Mayer Studios Inc. V. Grokster, Ltd., 545 U.S. 913, 954 (2005) (referring to films in the public domain).  It is the plaintiff who bears the burden of proving that its chain of title is valid.  See Yurman Design, 262 F.3d at 108-09.

However, the defendants' evidence of an alternative chain of title does lend credence to their argument that the plaintiff cannot prove it properly holds the copyright in the Fellini film.  The film was released in the United States in 1961 and there was extensive media coverage of the opening.  (Butterfied Decl. Ex. 14, Feb. 1, 2008.)  This evidence lends credence to the defendants' argument that Cinemat could not have conveyed

its interest to Hor in 1980 when the film had opened so publicly in the United States through a chain of title that is inconsistent with Cinemat continuing to hold the copyright. Moreover, Republic registered a restored copyright in the film in 1998.  IMF received notice of the Republic registration when IMF filed its registration in December 2002.  All of this evidence lends support to the defendants' argument that IMF does not hold the copyright to the Fellini film.

In any event, the plaintiff has failed to show that it has sufficient admissible evidence from which a reasonable fact finder could conclude that it was the copyright owner of the Fellini film.  See Am. Plastic Equip., Inc. v. Toytrackerz, LLC, No. 07 Civ. 2253, 2009 WL 902422, at **6-7 (D. Kan. Mar. 31, 2009) (granting summary judgment on copyright infringement claim when plaintiff cannot meet burden of proving ownership of copyright).  Therefore, the defendants are entitled to summary judgment dismissing the plaintiff's claims for copyright infringement.[3]

---

[3] It is unnecessary to reach the defendants' additional arguments for summary judgment, including the argument that the defendants' film did not infringe the Fellini film.

## IV.

The defendants also seek summary judgment on the plaintiff's trademark claims, arguing that IMF does not own the copyright in the Fellini film and therefore cannot prove that it is the owner of the claimed mark.  In order to prevail on its Lanham Act claims for its unregistered alleged trademarks, the plaintiff must prove that "it has a valid mark that is entitled to protection under the Lanham Act" and that the defendants' use of the mark in commerce without the plaintiff's consent "is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (alterations in original) (quoting 15 U.S.C. § 1125(a)(1)(A)).

In this case, the plaintiff cannot prove that it owns a valid trademark.  The plaintiff has been unable to prove a chain of title that would make it the owner of the copyright of the Fellini film.  It follows from the fact that the plaintiff's chain of title is insufficient that the "plaintiff does not have any ownership or proprietary interest in any protectible mark that it alleges [the] defendant[s] to have infringed." Pannonia

Farms, Inc. v. USA Cable, No. 03 Civ. 7841, 2004 WL 1276842, at *6 n.15 (S.D.N.Y. June 8, 2004); see also Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp. Ctr., No. 00 Civ. 5502, 2001 WL 761076, at *4 (S.D.N.Y. July 6, 2001) (finding that standing to pursue trademark claim requires "some discernable interest in the mark").  Therefore, the plaintiff cannot show that it has standing to assert that there is confusion of origin or any other trademark claim and summary judgment in favor of the defendants on the trademarks claims is appropriate.

## V.

The plaintiff has also asserted state law claims.  The Court declines to exercise supplemental jurisdiction over those claims because the Court has dismissed all of the federal claims.  See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

**VI.**

The plaintiff moves to strike certain of the defendants'
summary judgment evidence.  Much of this motion appears to be an
effort to provide additional arguments that would have otherwise
been precluded by the reasonable page limits on the motion.  For
example, the plaintiff argues that evidence in the defendants'
affidavits is irrelevant and argumentative.  The Court has not
relied on any irrelevant or argumentative information, and the
Court has relied only on admissible evidence in deciding the
motion for summary judgment.  The plaintiff's motion to strike
is therefore denied as moot.

**VII.**

The defendants asserted a counterclaim for cancellation of
the plaintiff's restored copyright registration.  The defendants
bear the burden of proof on this claim.  The defendants agreed
after oral argument to withdraw their counterclaim without
prejudice if the plaintiff's claims were dismissed.  The
defendants' counterclaim is therefore dismissed without
prejudice.

## CONCLUSION

The defendants' motion for summary judgment is **granted**.
The plaintiff's trademark claims and copyright claims are
**dismissed**.   The Court declines to exercise supplemental
jurisdiction over the plaintiff's state law claims and those
claims are **dismissed without prejudice**.   The plaintiff's motion
to strike is **denied as moot**.   The defendants' counterclaim is
**dismissed without prejudice**.

The Clerk is directed to close Docket No. 54.

SO ORDERED.

Dated:    New York, New York
          March 31, 2010

                                        John G. Koeltl
                                United States District Judge

26